All right. Good morning, everyone. We are calling the matter of Cohen v. Infinite Group, Inc., case number 24-4695. Each side will have 15 minutes. If appellants would like to reserve time for rebuttal, please be aware you're responsible for keeping track of your own time. And if you are going to do that, please let me know how much time you'd like to reserve. Yes, Your Honor. Five minutes, please. Okay. All right. Go ahead, counsel. May it please the Court. My name is David Symes. I represent the plaintiff in this matter. We're here on a motion to dismiss for lack of personal jurisdiction that the lower court granted and should not have. The basic question of constitutional due process is one of fairness, whether a defendant has behaved in such a way that they've either purposely availed themselves of the forum, of the out-of-state forum, or purposely redirected their activity into that depending on what kind of cause of action theory you're proceeding on. Mr. Cohen is proceeding on both causes of action, both a contract cause of action, which is the purposeful availment, and a retaliation statutory tort cause of action, which is a purposeful direction. The defendant in this case moved only on the very first prong of the purposeful curtailment, arguing that Mr. Cohen was essentially a kind of a COVID-type remote employee who they didn't care where he worked, could have worked anywhere on the planet, and therefore they did not purposefully avail themselves of Oregon. The defendant is in New York. Mr. Cohen is in Oregon. And that was their basic argument. They cited several cases out of jurisdiction for this proposition. They did not cite the numerous cases out of jurisdiction, including one from Maryland, that say remote employees can create personal jurisdiction. But the basic question here is what, if anything, did the defendant do that we can say, hey, they reasonably availed themselves, and I'm starting with contract theory, of the forum, Oregon. And that answer is, to me, I have struggled with this case because it's so overwhelming what they did. They started by first negotiating with Mr. Cohen to take on a managerial agent-level job, namely president of one of their subsidiaries. Counsel, they didn't reach out directly to Mr. Cohen at first, though, correct? I mean, he was someone who was going to help them find somebody, and then he realized, wait, I might be perfect for this job. Yes, but you said they didn't reach out. Yes, they did, in that their recruiter reached out. Their recruiter was a third party, but it was an agent of them. So I'm only quibbling with the they. They did reach out, but it is true that, at least in the very initial call, that recruiter knew Mr. Cohen from business circles. These are cyber security services. Correct. Yes, Your Honor. Okay. Yes. So I think it's, but again, this is only one aspect of the Burger King analysis, the prior negotiations. Then you get into the contemplated future activities and the other factors. But I think that in this case, the negotiations, at all times, the defendant knew that Mr. Cohen was officed and a resident of Oregon. There was never any question about that. Let me stop there because you're not even getting to the other facts about the customers, the other employees. But let me ask you there. If the only connection here were Mr. Cohen living at his request in Oregon, would there be personal jurisdiction? I need to ask for a clarification, Your Honor. Are they installing him as a managerial president of their subsidiary in Oregon? Yes. Then the answer is clearly yes. That would be enough in your view. Yes. Not even a question in my mind. You guys get to decide. Thank you. We're not supposed to decide. I don't like to overstep. Facts are presumed in favor of the plaintiff here. And that's another factor. That's another factor. Even if you take their factual theory with some grain of salt that he was a remote employee, that's not my view. That's not our view. And under the law, discrepancies like that must be resolved in favor of the plaintiff. We're not dealing with summary judgment here. We're dealing with being bounced out of court. That's correct. And counsel, then what are we to make about the choice of law provision in the contract? Well, that's a good question. And the form selection clause. The choice of law provision in the contract, first of all, was not a signed contract. Are we talking about the employment agreement? Well, that's another great question. Yeah. As to which there's a factual dispute on that. The contract wasn't signed. And the contract was not. It's a funny contract if you read it. It is about the temporal duration of the employment only. That's it. How long are you going to be employed? It doesn't have to do. And so for that question, it might come into play. But not on the questions that we've presented. We've presented a contract claim because they breached, just flagrantly breached their agreement to compensate him when he took over as the second managerial agent of their second subsidiary for another year. That contract is, there was no contract. So there is no choice of law provision in that. And remind me, is it a choice of law only or does it also go specifically to jurisdiction? Well, Burger King says that choice of law. No. I'm sorry. In the contract. What are the terms of the contract? It's a choice of law, just flat out? Yes. Yes, ma'am. I think it is. With no delineation as to jurisdiction versus choice of law. Forgive me, Your Honor. I don't remember. The NDA, I think, had a choice of law. Non-disclosure agreement. And a non-disclosure agreement. Yes. Yes, Your Honor. The non-disclosure agreement is distinct from the employment contract. Yes. Yes, Your Honor. Very distinct. Okay. Well, I'll look. I don't remember, Your Honor. That's fine. No, that's fine. Yeah. Keep moving. So, I could be wrong. I believe that the non-disclosure agreement identified New York as a choice of law and forum, but it was not so specified in the employment agreement. In the other agreement. That's my recollection as well. There's a factual dispute as to the employment agreement, and your client denies actually signing that employment agreement. Not only denies signing it, which is a huge point, but also denies that it would even come into play because of the content of the contract. It is only on whether the duration of his employment, not on the contract claims that have been brought here. Well, counsel, what's your position as to at what point in this timeline from when he's hired or recruited to you get here before us? When did IGI have sufficient minimum contacts in Oregon for jurisdiction? Well, initially, or when did it become overwhelming? I mean, I think the answer is on the day they installed him as their president. By that time, you now have the prior negotiations in place, which Your Honor has asked some questions about. You then have an offer. You have a contract because there was an offer letter that was accepted. And then, and not only that, but you have anticipated future consequences, where for the indefinite amount of time forward, he is going to be their managing agent in Oregon. We keep beating up that he's the managing agent, he's the president. What are the other facts, in your view, that would tilt toward jurisdiction? Fine, Your Honor. Things like they expanded their role in Oregon over time. They hired Mr. Raimondi as another senior executive in Oregon, senior, I think, vice president of sales or some title, but another executive that they hired in Oregon. They asked Mr. Cohen to essentially run, seek sales opportunities in Oregon and outside from Oregon. These are all directions that this defendant is saying, hey, go do this from Oregon. What else? How about when they did it a second time and entered into essentially a second contract to install him as the acting president? I'm not sure, Your Honor. I actually struggled with that question about when. I think it's, you know, but I conclude it doesn't really matter because it became, because at some point in time, prior to the filing. The important question is upon the filing of the complaint, not sometime before that. Yes. I mean, I think it's a legitimate question because it's interesting, but I don't think it matters because at some point in time, prior to the time this complaint was filed, there was mountains of personal jurisdiction evidence that were ignored by the lower court. By the way, unfortunately, having practiced Oregon, I love Oregon, I love our judges, but boy, they're citing purposeful curtailment cases in the purposeful direction. They really missed it, and we all have bad days, but they did. They missed it here, both on the law and the facts. Well, I mean, in terms of the contractual, in terms of the contemplated future consequences and the actual course of dealing, which are some of the factors we're going to look at, it's my understanding that they not only established bank accounts and deposited money in the bank accounts of Oregon and dealt in that fashion with it, but once things start to go awry, I could be wrong on this, but I understand that IGI actually referred to compliance with Oregon law in terms of every aspect of the termination. They deferred to Oregon law with respect to that, correct? Absolutely correct. They sent my client a letter saying, essentially, we've complied with all the Oregon law. They knew Oregon law applied. You really think that they were unfairly called into this court? It's not even a close call to me. I'm sorry to say that, and you guys will tell me where I'm wrong if I am, but I just don't see it. You're absolutely correct, Your Honor. They paid Oregon state taxes. They shipped equipment. Now, it was just a computer. My friend and the other said, wow, it's just a computer, but they shipped it to him in  That's a big factor. Well, I mean, I think you got to rely on more facts than the fact that he's employed there. We're looking at an economy now with a gig economy, although he is an employee, not an independent contractor, where people are working remotely. So the concern I have is, at what point do you really move into what's literally nationwide jurisdiction, which I don't think is what the Supreme Court envisioned, to what are the specifics of this case? And here, that's what I go back to my original question. If it had only been him and his contractor, your position is there would still be jurisdiction. Yes, Your Honor. And then I asked you, what else is there? And now we've little by little teased that out, it seems. Well, I'd like to do more than little by little tease it out. Do you have any other facts? Yes, he ran the business both externally and corporately internally from Oregon at their direction. I'm not focused on him, per se. I'm focused on what they asked him to do from Oregon. So, yeah, so, I mean, sending out all the different social media constructs that he sent out, daily interactions with his employees back in New York. But he's doing it from Oregon at their direction. Counsel, I just want to make you aware that you're going into your rebuttal time. All right, I'll stop there. Thank you, thank you. May it please the court, counsel. My name is Sam Blatnick. I represent the defendant appellee in this matter. We're here today to decide an issue of specific personal jurisdiction. I would like to start by saying if my client had recruited Mr. Cohen, affirmatively knowing he was in Oregon, I think there might be a different situation. If the contract that my client provided required him to stay in Oregon, we might be in a different situation. Mr. Cohen submitted himself when we were trying to get suggestions from him and affirmatively recruited us to hire him, pursuant to a contract that allowed him to work anywhere. For that reason, Your Honor, I believe this is almost identical to your decision in Slepian from 2000. Under almost identical facts, although now we're in a pure remote environment. And I agree with what you were suggesting, Your Honor. If we were to file personal jurisdiction here, we could then be honoring personal jurisdiction when remote employees decide to go anywhere they want. And that's certainly not what the Supreme Court meant in Burger King and its progeny. Well, it wasn't like he went anywhere he wanted. There he was. And your client hired him. But he was free to go to California. He was free to go to Nevada. He was free to go to Arizona. But when they hired him, they knew he would be in Oregon. All of this. That is correct, Your Honor. They knew he would be in Oregon. They appointed him to essentially a managerial, fairly high-ranking position, correct? Yes. And then it seems to me that surrounding that appointment, then they expanded their operations and context with the state. Well, let's go through the context because I want to be mindful of Walden and whether the context that my client made were my client's context or those that were incumbent and inherent in Mr. Cohen's responsibilities. And I believe it needed to be the latter. They hired Mr. Cohen in 2021, who happened to be in Oregon, pursuant to an agreement that allowed him to be anywhere. And by the way, just to clarify the record, we have three signed agreements. The NDA, we have an employment agreement, which is electronically signed, and it is in the file. There is a factual dispute as to the employment agreement, correct? I believe the agreement speaks for itself. I understand that's your position, but there is a clear factual dispute. The district court, there was a factual dispute. And how does the district judge analyze a factual dispute in the context of a motion to dismiss? What the district court did and what I believe is perhaps the right thing to do, Your Honor, we did not file a cross-appeal, is acknowledge that the NDA is a factor to consider, that at least as it relates to the NDA, which is part of the relationship. The nondisclosure agreement. Correct. That was signed by part of the leading up to the hiring. Important, Mr. Plotnick, to clarify. We've got two different agreements here. We have a nondisclosure agreement and we have an employment agreement. And as to the nondisclosure agreement and the discussion of choice of New York law, for example, but the employment agreement, there's a factual dispute in terms of whether or not it was signed or not, correct? I believe that is correct, Your Honor. And in the context of a motion to dismiss under Rule 12b-1, you look at, you assume in all facts with respect to in deference to the plaintiff at that initial stage, correct? That is correct, Your Honor. Although there was also an employee handbook that's part of the file as well. I understand. That he was working pursuant to. That also provides for New York jurisdiction. Yeah, yeah, okay. Okay, so if I can just follow up to follow up on your response to Judge McEwen's question in terms of remote work and people can move anywhere, certainly that that kind of situation can be addressed clearly in an employment contract that's clearly signed and there is no factual dispute on that. I mean, that's the kind of thing that could certainly be addressed in terms of how you deal with that. But the employment agreement allowed him to go anywhere. I understand. But an employment agreement could deal with the hypothetical you note in terms of going anywhere if it so chose and it was clearly signed and there's no factual issue as to that if that were the case, correct? I believe that's correct, Your Honor. Okay, all right. So you had mentioned Walden and it seems to me that the unilateral activity that the court spoke to in Walden is different in nature than what we're talking about here. So I'd appreciate your comments on that. Yeah, and so what I want, I actually would like to unpack this a little bit if I may, Your Honor. We have a non-rigid test here in the Ninth Circuit. We have purposeful direction. We have purposeful availment. I believe purposeful availment under the Sloppian decision, which again is virtually identical facts, is the appropriate standard and that for, you know, concise opinion that Smith found that there was no jurisdiction, I believe is controlling as it relates to the purposeful direction. Although candidly, much like in Sloppian, there are some factors here in addition to simply working in the jurisdiction.  But those factors are all ancillary to his responsibility. He had to open a banking account. Yes. He chose to hire someone in Oregon. The company didn't. Do they work for the company or they work for him? They work for the company. His hiring. Three customers out of thousands were in Oregon. He was not directed to target Oregon investors. He was not directed to target Oregon's customers. Because he happened to be in Oregon, he did things in Oregon that were attenuate to his job. Therefore, I respectfully submit that there was no purposeful direction. I would also, however, like to address the purposeful availment. I'd also like to address the purposeful direction because it is in the briefing and it is part of the judge's rulings. For purposeful direction, appellant relies on correspondence FR 99 through 106. And earlier, there was a reference to my client referencing Oregon law. That's not completely correct. My client sent a termination notice to Mr. Cohen. Mr. Cohen then waited until two days after the deadline for his last payment to be made, sent a letter saying he was speaking with a lawyer and he referenced Oregon law. My client then responded. The correspondence here that my client was making was trying to resolve a dispute. It was not like in Bancroft where they were trying to instigate a dispute. Bancroft, you know, the master's response said, I thought the record reflects Oregon law is being followed by IGI in every aspect of your term. In response to his accusation saying that on July 7th, that they were saying that my clients had not followed the law. So all they were doing was addressing, I apologize, all they were doing was addressing his allegations against my client. Which I mean, if you're trying to resolve something, isn't that a logical approach? And so, Let me kind of push back on that. If you don't believe that you are governed by Oregon law, maybe the logical response would be we are following the law of New York, which is what we said. We don't dispute that. The law of Oregon is meant to protect an employee in Oregon. Law of the wage payment in New Jersey is meant to protect. The optical law applies because he was working there, because he elected to work there. So it's an issue of substantive law versus personal jurisdiction. And it's our position that if this matter was properly filed in the Western District of New York, then that court would be applying Oregon law. We're not going to dispute that. And so, again, the facts we have are the following. Employee allowed to work anywhere he wanted, happened to hire someone there, bank account for purposes of his job, and one laptop shipped. No representative of IGI ever flew out there. During the interview process, all the trips were made by Mr. Cohen to IGI in New York. Again, IGI did not target him through a recruiter for hire. The recruiter targeted him for information about other candidates. Mr. Cohen was allowed to move anywhere he wanted. The district court found, based upon those, that there was no direct personal availment, and there was no personal direction, because the letters were written to Mr. Cohen, not necessarily to someone in California or in Oregon. And that's where, again, I think you have to distinguish between Yahoo and Bancroft. The question then becomes, if we're going to look at those as personal direction by sending letters to someone in a state, the question then becomes, were those letters expressly aiming at Mr. Cohen in an adverse way? And the Cohen distinguished or Yahoo distinguished between Bancroft and that Bancroft, you had someone that was goading someone into litigation. At Bancroft, they sent a cease and desist letter, the response of which had to be, the person either had to drop the domain, they had to stop using it, or they had to file a declaratory judgment action, which is what they did. The correspondence between my client and Mr. Cohen, again, at 99 to 106 of the record, is not goading Mr. Cohen, it's trying to resolve the matter with him. Every single one of those letters my client ends, I hope we can try to resolve this, I hope we can try to resolve this. It was Mr. Cohen who then ran and filed a lawsuit in Oregon. And so I think that you look at Yahoo and you look at Bancroft, this is more like Yahoo than it is like Bancroft, as it relates to the purposeful availment prong that Judge Nelson adopted. What's troubling here is that a lot of your emphasis, it seems to me, to be on the fact that he's in Oregon, he says, I want to work in Oregon, fine. They could say, we don't want to establish this setup with Oregon, so we're not going to hire you. But once they decide to have an employee-employer relationship, it seems to me that you then kind of look anew. It's not like just that, oh, I want to be in Oregon, therefore I am a unilateral contact. It seems to me it takes two to tango in this situation. The company decides, okay, we're going to enter into this contract with this guy in Oregon. We're going to appoint him to a high-level position. He's going to do all these things on behalf of our company. And where is he going to do them from? Oregon. Or wherever he chose to be. No, but they knew, that might be, maybe he decided to go to California. But at the time they enter into the contract with him, they know that they are establishing a high-level employee in Oregon. Well, if we look to the PICO decision, P-I-C-O-2. Right, I'm familiar with that. We know that discharging responsibilities in a state does not itself give rise to jurisdiction. I believe Burger King stood for the same proposition. Right. And so we can't just look to the fact that he was an Oregon employee. There has to be something more. And I believe Councilman May had misspoke. We did reference the Perry decision, which is the District of Maryland decision from 2020 extensively in our brief. It found a lack of jurisdiction under fairly similar facts. And it is the, while not binding clearly on this panel, it is... Obviously, the opinions of the District Court of Maryland are great. Wait, I'm sure that you... It has become the de facto seminal opinion for citations. It is cited, because it's such a thorough recitation of law as it applies to the facts. I believe it's the most cited case. And we cited it as well. But I just, in all candor with both humor aside, Mr. Blanknecht, I think when we look at the... We've referenced the Walden Supreme Court case in 2014, and it's clearly the plaintiff's contacts in the form are not the defendants. That's what Walden stands for. But, again, following up on an earlier question by Judge McKeown, if the plaintiff is a defendant's agent, then plaintiff's contacts may count as defendants, and then they clearly list some criteria that you... With the analysis in terms of contract negotiations, on which we spent a lot of time so far this morning, contract terms, but also contracts contemplated future consequences. And as Judge McKeown just suggested in her question, fourth party's actual course of dealing, all of which clearly anticipated in terms of contemplated future consequences and actual course of dealing, they clearly stand in favor of jurisdiction at this point, do they not? The contacts for the negotiations were New York. I understand. Mr. Cohen flew out there. My client is 3,000 miles away, and that's... So my client wasn't going to fly out 3,000 miles to hire one individual, nor do they frankly want to litigate 3,000 miles away for that same reason. All of the negotiations were New York. Mr. Cohen flew out several times to New York. You're focusing upon... I'm just trying to get... Make sure you utilize your time accurately. I don't want to take up too much of your time, but you're focusing upon contract negotiations, which may or not slightly favor jurisdiction, and then you have contract terms, which may be arguably neutral, but then you get to contemplated future consequences and actual course of dealing, both of which would favor jurisdiction. I'm looking at all the factors listed in Walden, not just the matter of contract negotiations. There are other factors to be considered by Walden, correct? But the factors that... Yes, you're correct. The factors that are being considered here are things that necessarily would have been discharged by an individual who was hired, who happened to be in Oregon, wherever they happened to be, as opposed to somebody else at IGI saying, we want to target customers in Oregon. We want to build an office in Oregon. We want to have advertising in Oregon. These are things that, kind of like in Perry, were necessarily attenuate to the decision to hire a remote employee, and hiring a remote employee itself, I believe, respectfully, does not give rise to jurisdiction because of the PICO facts, given that discharging a job outside of that itself, discharging a job outside of the state, does not give rise to alone jurisdiction in that state. Well, not alone. I mean, I think PICO, to be honest, this case falls between and among the Ninth Circuit jurisdiction cases, because we don't have something that I think is directly on point. Yeah, and to be fair, Your Honor, in assessing the Ninth Circuit cases and cases from other jurisdictions, the reaction is, you know, we heard an analogy earlier. I'll use a different analogy. I mean, cases are a little bit like dogs. Every dog's a little different, right? You're never going to find the exact same one. We're not skinning cats here. We've gone from skinning cats earlier, and now we're with dogs. Yes, even though you may love them all, but they're never going to find completely overlapping facts. And I truly think the closest overlapping facts that are in this circuit, at least in the Ninth Circuit level, is Slepian. And I mean, it is a situation where it was, you know, remote as an accommodation. And that's where I started with this. I'm going to finish with this. If this case was something where we had affirmatively, and that seems to be the thread throughout the cases in the country. If you affirmatively recruit someone in a remote situation, and I don't see how this can't be considered a remote situation. He was working from his home 3,000 miles away. Then you could potentially give rise to jurisdiction. But that's not the case here. He took an opportunity, and candidly, as this case plays out, was not qualified for the job, unfortunately. So my client had to make a very difficult decision. It was a very difficult decision in the summer of 2023 to terminate him. It wasn't a personal decision. It was one that was made for business. It was made for business with respect to an employee who happened to be in Oregon for the two years that he worked for us. I appreciate your time. Thank you. Thank you.  Free to go anywhere else? With this refrain, he's free to be anywhere. He could be anywhere on the planet. That's not the test. The test is actual. The test is reality. Where were you? Oregon. That was known. And by the way, I mean, they say that. That, oh, he's free to be anywhere else. We don't know that. It never happened. All we know is he was from Oregon. They knew that. And they hired him in Oregon and kept him there for two years. And I really don't appreciate the comment about his performance. We'll deal with that in the litigation. Walden, the idea that they didn't direct the contact customers in Oregon. Well, that's just not true. It wasn't all the customers, a small number of customers. But they directed through Mr. Cohen and his contacts, which they hired to use. He sent out thousands of social media contacts in Oregon and elsewhere. That's in the record. Thousands. But again, under Walden, the criteria is not the plaintiff's contacts. It's the defendant's contacts. But then there are factors we look at to determine if the plaintiff is acting in an aging capacity and there's other categories is the point. My argument, Your Honor, is that these actions were the defendant's actions because Mr. Cohen was by them installed as the president. These are their actions. And they knew it. It's not like you've got a low-level salesperson with no real authority to do something. And this is the president. And they're telling him what. Look, they're not going to say, Mr. Cohen, please direct your activities to these customers only because he's the president. They're relying on him to go win business anywhere he can. And that, in this case, happened to include lots of activities in Oregon. They made the point that in the negotiations, and I think maybe ever, nobody from IGI came to Oregon. Well, Mr. Rudowitz never went to Florida in Burger King. And jurisdiction was appropriate over him. I think all of the factors, I think, tend towards jurisdiction. Some of them massively do. The anticipated future consequences and the actual course of dealing. But the first two, I submit, when you really look at them, to the extent there are some factual disputes about some of them, the prior negotiations and maybe the contract itself. Counsel, you are over your time. If you want to finish your sentence, feel free. I think I should win. I don't know where I was. I'm sorry. All right. Thank you. And he feels the opposite. So thank you. I'd like. All right. Thank you, counsel. This matter is now submitted. And this concludes our arguments for this morning. Again, thank you to everyone and the clerk's office for their assistance.
judges: McKEOWN, ALBA, Bennett